# Fairbanks & Company *v.* Cawthorn & Rudisill.

*Action by Agent against Principal, for Commissions on Sales.*

1. *Agent's commissions; sales at reduced price.*—An agent for the sale of manufactured goods, at a specified commission on the amount of sales made by him, suing for commissions due on sales effected by him at reduced rates, which his principal denied his authority to make; the court examines the correspondence between the parties, as set out in the bill of exceptions, and holds that the agent had authority to sell at such reduced rates, in order to meet the competition of other sellers in the same business.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the partners composing the late firm of Cawthorn & Rudisill, against N. K. Fairbanks & Co., a partnership doing business in St. Louis, Mo.; and was commenced on the 13th August, 1889. The plaintiffs sued to recover $150, as the commissions due them on the sale of a large quantity of lard, which they had sold as agents for defendants; while the defendants denied their authority to make the sale at the price obtained, and claimed damages, under the pleas of set-off and recoupment, on account of losses sustained by them on the sale. The case being submitted to the decision of the court without a jury, judgment was rendered for the plaintiffs; and this judgment, to which the defendants excepted, is asssigned as error.

J. M. McMASTER, for appellants.

M. H: WADE, *contra.*

STONE, C. J.—In this case a jury was dispensed with, and the testimony was submitted to the court for decision. Judgment was given in favor of the plaintiffs, and the sole question raised is, whether the court's finding of facts was justified by the testimony.

N. K. Fairbanks & Co., a corporation, was engaged in manufacturing lard in St. Louis, Mo. Cawthorn & Rudisill were brokers, or agents, selling its lard in Birmingham, Alabama,

their commissions being two per-cent. on the amount of sales made by them. On February 11, 1889, they effected a sale of three car loads of lard at $6\frac{1}{2}$ cents per pound; and the only question presented for our decision is, whether they were authorized to sell at that price. The market price immediately preceding that sale had been above that figure from one half to one cent per pound. Other manufacturers of lard had an agency in Birmingham, and had been and were competing with Fairbanks & Co., for ascendancy in the Birmingham market. Armour & Co., and Armour, Cuddy & Co., were the competing manufacturers, and Stollenwerck was their agent for making sales in Birmingham.

Swartzkopf was travelling agent or salesman of N. K. Fairbanks & Co., but the extent of his authority is not clearly shown. The only evidence the record furnishes on the subject is the following: Cawthorn, in giving his testimony, stated: "That the afternoon of the day on which the sale took place, Mr. Swartzkopf, a travelling agent of N. K. Fairbanks & Co., was in the city of Birmingham. That Swartzkopf came to Birmingham four of five times a year. That on the day above mentioned the question of meeting the market in case defendant's said competitors went below the quotations furnished, was discussed; and in conversation with Swartzkopf at the depot, when he was about leaving for Montgomery, Mr. Swartzkopf said, 'I would not go below $6\frac{1}{4}$ per pound.'"

In Rudisill's testimony is this expression: "The agent, Swartzkopf, came around occasionally, and assisted in making sales when here, and would give instructions." In a letter from Swartzkopf to Fairbanks & Co., of February 12, 1889, is this language: "I would not meet $6\frac{3}{4}$, and yet against my positive instructions not to go lower than $6\frac{3}{4}$, and not that unless absolutely necessary, they sell at $6\frac{1}{2}$." This letter was introduced by consent, as Swartzkopf's sworn testimony.

In a letter of Cawthorn & Rudisill to N. K. Fairbanks & Co., dated March 20, 1889, is this language: "Mr. Swarzkopf told the writer, at the depot, on the afternoon of February 11th, the day on which we sold the lard, that we might sell at $6\frac{3}{4}$."

We have now copied all the record shows, either of Swartzkopf's authority to direct Cawthorn & Rudisell in the execution of their agency, of his power to change or modify instructions emanating from the N. K. Fairbanks & Co. corporation, and the extent he exercised that power, if he was clothed with it. It will be seen that all he did in that direction was, that when he was leaving Birmingham on the day, and shortly

before the sale was made, he remarked to Cawthorn, "I would not go below 6¾ per pound."

It was in uncontroverted proof that, for some time before and on the 11th of February, 1889, the Birmingham market for lard was unsettled. It was also proved without contradiction, that on that very day, Swartzkopf, before leaving Birmingham, contracted to sell a car load of lard, to be paid for at the lowest figure the market would reach that day; and that Fairbanks & Co. filled that order at 6½ cents per pound.

The present suit was for 2 per-cent. commissions for making the sales of February 11th, 1889, at 6½ cents per pound. The plaintiffs, in support of their claim, read letters from the defendant corporation, of various dates preceding the sale, from which we subjoin extracts: September 10, 1888: "We note that Armour & Co., and Armour, Cuddy & Co., and Cudahy, have the same representatives. In this case, you will have to treat a cut made by their agent as a cut made by all three houses, and meet it promptly, and advise us with equal promptness, and we will take the matter up with all of them, and get straightened out as soon as possible." September 13, 1888: "Are Armour & Co., and Armour, Cuddy & Co., holding right to combination prices? If they do any cutting, meet their figures promptly." September 14, 1888: "Armour & Co., Armour, Cuddy & Co., and Cudahy, together are a pretty hard set to handle, and you will have to watch all the corners closely. We are willing to leave you a little latitude for discretion, but you must exercise it judiciously," &c. November 26, 1888: "We can only say that, when you have positive evidence of the Armours cutting, you will have to meet their prices." December 10, 1888: "You will please watch the situation closely, and keep us fully advised, and do not let Stollenwerck outgeneral you. We will have to meet any cuts made by him, and of course will have to depend on you to keep us posted regarding them." January 28, 1889: "We have arrived at the conclusion, that the only solution of the problem is to make Birmingham an open point, and will therefore say to you not to allow yourselves to be whipped out of the market, and to meet all legitimate competition." February 6, 1889: "In reply will say, that in sending you telegram to which you allude, we had no intention of giving cast iron instructions. We desire you, as instructed formerly, to meet the situation to the best of your ability, and with discretion and good judgment. We do not desire you to be outgeneraled by Stollenwerck, and shall rely upon you to watch his moves carefully, and secure your share of the trade. We, of course, do not wish you to inaugurate any system of cuts."

10

During the period covered by the letters. from which we have extracted, N. K. Fairbanks & Co. sent telegrams to plaintiffs on each of the following dates: In 1888, October 9, 10 and 11; November 20; December 21. In 1889, January 24 and February 4. The substance of these several telegrams was, "to meet cuts and competition." Telegram of February 6, 1889, is in this language: "Letter received. We expect you to meet situation."

The testimony is full and uncontradicted that, on February 11, 1889, before Cawthorn & Rudisill made the sales which gave rise to this suit, Stollenwerck, acting for Armour & Co., and Armour, Cuddy & Co., effected a sale in Birmingham of three car loads of lard at 6½ cents per pound. Giving to the letters and telegrams fair interpretation, we think Cawthorn & Rudisill were authorized to meet the cut in prices made by Stollenwerck, on February 11th, and that the City Court did not err in rendering judgment in their favor.

Affirmed.